22-2078 Federal Trade Commission v. Ross. Mr. Greenspoon. Yes, thank you, Your Honor. And good morning, Your Honors. May it please the Court. A federal agency continues to claim the fruits of an awesome power, that it should never have aggrandized to itself, and that courts should never have recognized. And I, Your Honors, I personally stood before a panel of this Court nine years ago, in this courthouse, representing appellant Kristy Ross, and I urged this Court to issue the same holding, recognizing the FTC's lack of Section 13b monetary judgment power, that the Supreme Court eventually handed down in AMG Capital. Ms. Ross lost then, but this Court called her argument not entirely unpersuasive. Once the Supreme Court in AMG Capital adopted Ms. Ross' argument, finding it entirely persuasive, Ms. Ross went back to the District Court and asked for 60b-4 or 60b-6 relief, which the District Court denied. And since that was error, Ms. Ross respectfully requests reversal and vacatur of the improper monetary judgment of $163 million. And I'd like to start with Rule 60b-4, if time permits, move to Rule 60b-6. So as I will explain, Your Honors, this Court in Compton issued a decision that controls here and merits reversal. Under Rule 60b-4, a void judgment must be vacated. There is no discretion. Judgments that rest on no subject matter jurisdiction are void. This Court in Ali v. Hogan... Isn't the difference with Compton that the party didn't appear there, right? So the Court entered a default judgment. Here you did appear, and as you say, came up here and we ruled against you. It turns out incorrectly, but that's res judicata. And we have cases saying that to overcome that res judicata barrier, you have to show there is no arguable basis for what you call jurisdiction in the case. So how do we find there was no arguable basis at the time when we affirmed at the time? Right. I understand the question, Your Honor. The answer is that the arguable basis exception that has been applied by this Court in two cases, Wendt and Hawkins, to Rule 60b-4, has to do with a policy of careful jurists who need to be sure at the time of the Rule 60 motion that there was no jurisdiction. And what we have here is we have no doubt whatsoever. What in those cases suggests we look at the time of the motion? I read both of those cases to be looking at the time that the issue was originally decided. I think Hawkins says as much. In fact, Hawkins in one place says something that I think in a parenthetical, basically also at the time of the original judgment. What you see in Hawkins, I was actually going to bring this up as part of my argument, is that every other time that it mentions the arguable basis standard, it mentions it in the present tense, meaning at the time of the Rule 60 proceedings. So, you know, in other words, in Hawkins, there was an arguable basis for jurisdiction because it was a circuit split, or rather it was a circuit versus a Supreme Court ambiguity on whether a Hungarian company's KFT status qualifies as an LLC versus a corporation. Well, that was an uncertainty that existed at the time of the original judgment, and that was a legal uncertainty that existed at the time of the Rule 60 proceeding, and that was a legal judgment or a legal issue that remained uncertain at the time of the appellate proceedings. So at all of those times, there was legal uncertainty in the actual rule to be applied. But when the Hawkins court is discussing it, Why would we look at the present? In that case, every time the law changes, we change our precedent, or the Supreme Court changes our precedent, or maybe they clarify what was unclear at the time of the original ruling, finality is out the window. Every ruling is retroactive to cases that are no longer on direct appeal infinitely, for decades or centuries, depending how long the parties live. Why would that be the rule? Well, I respectfully disagree that our argument goes that far because what Your Honor just described is the mine run of cases. We have a concern about floodgates. We have a concern about retroactivity. We're not talking about the mine run of cases. We're talking about cases where there's a jurisdictional ruling that clarifies what had previously been uncertain law, and that does apply retroactively. There's no suggestion whatsoever in any of the cases cited by the FTC that a jurisdictional ruling is only forward-looking. But that begs the question of whether or not the Supreme Court's decision was actually a jurisdictional ruling. I mean, Hawkins was the traditional question of diversity, jurisdiction, and it was in that context that the Court suggested that there was an arguable basis for jurisdiction. There's been no dispute that both the FTC and Ms. Ross were properly before the District Court when it granted relief. The only question was the scope of relief. So, I mean, that just seems to me to be an entirely different can of worms, not having anything to do with jurisdiction. Well, two answers to that, Your Honor. First, this is a case about standing, standing to seek a certain kind of relief. In Ollie v. Hogan, this Court said lack of standing leads to a lack of subject matter, jurisdiction. And the second part of the answer is that the Supreme Court holds that we don't bestow standing in gross. So standing for a party has to exist for not only every claim they raise, but every type, form, or kind of relief that they seek. That's exact language from the TransUnion case, and the TransUnion case relied on the Summers v. Earth Island Institute case. So what we have here is a jurisdictional issue. The third part of my answer, if I go a little bit further, is the wording in AMG Capital is unambiguous, and this Court's Pukey decision recited it in its unambiguous form that that decision, AMG Capital, was about authority, authority in two dimensions, both dimensions, authority of the court and authority of the party. Authority holdings are the language of jurisdiction. I can see the word jurisdiction is not used in AMG Capital, but it didn't have to be for that language to be so strong. Well, the district court below said that the judgment was not void, one, for the arguable basis, but also because the remedial provisions of 13b are not jurisdictional in nature. I recall that, Your Honor. May I respond? Sure. The district court was relying on the same case that the FTC relies on for that proposition, which was United States v. Philip Morris, and several other district court cases have relied on that case as well, but that decision does not hold what the FTC says it does on pages 16 to 17 of its brief. In the FTC's words, the holding supposedly was that a remedy error would not render a judgment void under Rule 60b-4. Instead, what the D.C. Circuit actually held was that an excess of an authorized kind of relief is not a voidness-type error, what it calls exceeding remedial jurisdiction. So there, the double TV ads in Philip Morris were at worst an excess of the authorized remedy of single TV ads. And Philip Morris says nothing about unauthorized kinds of relief. And this understanding is consistent with Compton. So remember, in Compton, there were really two parts to the judgment. There is a $300 compensatory wage remedy, and there is a $60,000 penalty. The wage remedy was upheld, but this court had no trouble cleaving off the authorized wage remedy from the $60,000 penalty for which there is no statutory authorization. That was a direct appeal, right? That was a Rule 60 appeal. It was an appeal from a Rule 60 disposition. In Compton, there had been a default, and so the motion by the default party was brought under Rule 60 and then reviewed under Rule 60. I mean, but is that a distinction? I mean, it was a default judgment. We're still on direct appeal. Here we are, you know, however many years later, litigating an issue that a panel of this court had ruled against your client on on the merits. I've heard your Honor say default a couple of times to distinguish what my client did, which was to fight, but I would posit that defaulting and fighting are two edges of a spectrum. In the middle, there's something else called a squanderer. So the defaulter and the fighter get the benefit of Rule 60 in these fashions. A person who squanders their opportunity, who's appeared in a case but chooses not to appear, those are the types of parties in Wint and in Hawkins who are given no extra leeway. So they got nothing. But if you're a fighter or a defaulter, you get the full benefit of Rule 60. And I see I'm into my rebuttal time. I'll just... No, I mean, you still got some... The yellow light just means you... Oh, I see. Thank you, Your Honor. You know, I think I made that same error nine years ago. But in Compton itself, the... Well, let's go back to the FTC's response to Compton because I think this speaks volumes. They solely argue that Compton did not reach and apply Rule 60 before. They say its holding was under subsection 6, and that's, I think, on page 23 of their brief. But that's clearly wrong because at 608 F. 2nd. 106 in Compton, this court squarely stated that such judgment, meaning the $60,000 penalty that had no statutory authorization, was, quote, void. Still quoting. This represents a separate and distinct ground for vacation of a judgment under 60B. The ground is established in this case. When such a ground exists, vacation of judgment is required, unquote. That destroys the only argument made by the FTC for distinguishing Compton. There is no way to consider such statement dictum. And I could stop there, but there's quite a bit more. Since I'm running low on time, I'll make one point about arguable basis, which is I would urge Your Honors to review the Bell helicopter decision from the D.C. Circuit because Ms. Ross cites Bell to explain the inapplicability categorically of an arguable basis principle under Rule 60B. 4. The D.C. Circuit made short work of... I mean, Hawkins cited Bell, right? Hawkins talked about Bell and distinguished it on that res judicata basis that we talked about earlier. Well, at the very least, if we're not going to go as far as Bell helicopter and consider that voidness is voidness, it's binary, it's either judgment with subject matter, jurisdiction, or not, if we're not going to go as far as Bell did, then at least we should use the inspiration of Bell helicopter not to expand the arguable basis exception in two ways that the FTC is asking. Expanding it to a situation where there's not a circuit split and there's not uncertainty in the law, or expanding it to a situation where somebody did not squander an opportunity to appeal. The distinctions in Wendt and Hawkins when it did apply an arguable basis exception are that the law remained uncertain at all phases of the proceeding, unlike here today where AMG Capital tells us what the law is, jurisdictional law. And the other distinction is that there was a squanderer, unlike Ms. Ross. So just a couple words on Rule 60B.6 unless there are further questions on those dimensions. So here again, under Compton, it's alternative holding. Rule 60B.6 should afford relief. And sufficient exceptional circumstances exist. I mean, if a $60,000 judgment unauthorized by statute was, quote, unquote, unconscionably unjust in Compton, unconscionably unjust, the $163 million unauthorized judgment here was only more so by a factor of 2,000. And the FTC, like the district court, seems to misunderstand that Ms. Ross does not rely solely on the change in the decisional law to point out exceptional circumstances. So, for example, Ms. Ross pointed to the Ninth Circuit's Phelps case, which helps her, but the district court did not pick up on these extraordinary circumstances. In the Phelps case, her fighting for it, the AMG capital holding, at every stage of her original litigation, puts us on all fours with Phelps. And like this court's Compton case, she points to a monetary judgment that issued without statutory authorization, and unlike the facts in the FTC's Dow case, she is not trying to use Rule 60B.6 as a substitute for an appeal not taken. And finally, it is extraordinary that one of the FTC's cases that denied Rule 60B.6 relief to a different party, after AMG capital, did so because the other party was not Ms. Ross, calling her out by name as an exemplar of somebody who would show exceptional circumstances. That's just so I'm clear about what you mean by extraordinary. Because it isn't extraordinary that a Supreme Court would issue a decision that would run contrary to what every other court thought was the law. That happens not infrequently. So that alone isn't enough. It's your view that because it's just the nature of the sum of the amount involved that sort of puts it over the edge? It's all of the factors. It's the totality. And in fact, it's the totality which the district court ignored. The district court thought we had only one laser-beam focus argument for exceptional circumstances, when in fact we had what Your Honor just said, plus we had her fighting for that exact holding at every step of the way in her original litigation, plus the fact that the underlying law that we're talking about exposed the lack of statutory authorization by courts and by the government. It's a combination of things, the totality of which the district court did not take into account. So in the John Beck Amazing Profits case, however, very interesting, surely it's dictum in that district court decision, but that district court judge picked out Ms. Ross as somebody who would be entitled to that kind of consideration. So therefore, Ms. Ross respectfully requests reversal under Rule 60b-6, if not under Rule 60b-4. And I'll reserve the rest of my time for that. Thank you, Mr. Greenspoon. Mr. Hoffman? Thank you, Your Honor. May it please the Court. Ms. Ross's only argument for reopening this case is that seven years after her case became final on appeal, the Supreme Court changed the law, and that's not enough to justify relief under Rule 60b. When the Supreme Court issues a new statutory interpretation decision,   and it's not enough to justify relief under Rule 60b. All cases that are still open on direct review, it doesn't provide a basis for reopening cases like this one that were fully adjudicated and closed years earlier. And that's because the principle of finality is very important to the legal system. At some point, litigation has to end, and the parties have to be bound by the result. Now, Rule 60b does provide some exceptions to the finality rule, but they're construed very, very narrowly so that the exceptions don't swallow the rule. Since Ms. Ross's counsel focused mostly on Rule 60b-4, I want to start with that. And let me just start with the Supreme Court's decision in Espinoza, which I didn't hear counsel mention. And that really explains the principles that govern here. And the Court said, void is very narrowly construed so that the exception doesn't swallow the rule. A judgment is not void simply because it may have been erroneous. Rather, it applies only in the rare instances where a judgment is premised on either a certain type of jurisdictional error, so not just any jurisdictional error, only certain types, or a violation of due process that deprives a party of notice or opportunity to be heard. So do you concede that this was a jurisdictional error? This was not a jurisdictional error, Your Honor. That's my first point. AMG had nothing to do with the Court's jurisdiction. The issue in AMG was how to interpret the word injunction and whether injunction was limited to prospective behavior relief or whether it also encompassed ancillary equitable monetary relief. And the Supreme Court held that it was limited to prospective injunctive relief. That is not a jurisdictional ruling. 13b has nothing to do with jurisdiction. The Court's jurisdiction is premised on Section 1331, 1337A, and Section 1345 of 28 U.S.C. And it doesn't have anything to do with standing either. You know, Ms. Ross has gone to great pains to recharacterize this on appeals as an issue of standing, but the issue is not whether the Court, whether the FDA had standing to seek this type of relief. And the Supreme Court said nothing about standing in AMG. The issue is simply whether this is a type of relief that was authorized. It's a merits decision, not a standing decision. But even if there were some jurisdictional error there, error here, and I don't think there were, the arguable basis test clearly applies. And, again, the arguable basis test has been applied by this Court in numerous cases, including Wendt v. Leonard from 2005, which is before Espinoza, which said a judgment is void only when there is a total want of jurisdiction and no arguable basis in which the District Court could arrest the defendant that had jurisdiction. And the Supreme Court endorsed that test in the Espinoza case, saying that a judgment is generally void only when there's no arguable basis for jurisdiction. I think here there clearly, as Judge Rushing made clear, there clearly was an arguable basis for jurisdiction, assuming that there was an arguable basis for the Court's ruling, which was not jurisdictional in nature. There was an arguable basis for the ruling because every court of appeals, which had addressed the issue at the time, and there were many of them, had held that Section 13B did authorize monetary relief. Now, in Wendt, the Court said that, well, when there was a circuit split, that shows there was an arguable basis. Here the case is even stronger. Now, the Justice Council has argued that arguable basis has to be assessed now rather than being assessed at the time the decision was made. And with all due respect, I don't think that rule makes any sense. That would be focusing on whether the judgment is erroneous now rather than focusing on whether there was an arguable basis for it. That would be changing the test. And, again, Espinoza makes very clear that it's not enough that the judgment is erroneous. And Hawkins says, you know, the issue here is even if it's erroneous, there was an arguable basis for it, the decision stands. It would also be inconsistent with those principles of retroactivity that I laid out at the beginning, which are set forth in the Supreme Court's Harper and Reynolds-Zill Casket cases. If you were saying we look at the situation now, then you would, in effect, be saying we're going to apply new decisions in all cases, not simply on cases that are still open on direct review. So I think that the suggestion that you look at the situation now just can't be right. We heard a lot about Compton, and I guess I want to say a couple things about Compton. First of all, this is a fairly old case, which predates a lot of this Court's decisions. And certainly the Supreme Court's decision in Espinoza. So I think that although the Court certainly reached the right result there, I'm not sure how much of the analysis in that case remains good law in light of the principles that have been laid down by the Supreme Court. What happened in that case was there was initially a default judgment in the Maritime case where someone wasn't paid for some wages when he should have been paid, and the person was awarded those wages, but the judge tacked on a very, very large penalty. And when the large penalty was tacked on, the defendant who hadn't shown up previously said, wait a second, and moved to set the judgment aside. I think analytically now that case involved an error of law, the misapplication of existing statutory law. That's an issue that I think would now be properly analyzed under Rule 60b-1 in light of the Supreme Court's Kemp decision. The Court does talk about Rule 60b-4, although it ultimately, I think, decides the case on Rule 60b-6. And, of course, Rule 60b-6 only applies when there's no other basis. So I don't see how it can be viewed as a 60b-4 case. But in any event, you know, the Supreme Court has subsequently made very clear that 60b-4 is limited to very specific types of jurisdictional errors. We don't have a jurisdictional error here, and even if we did, there was an arguable basis for it. So let's say we agree with that, but there's still 60b-6, right, which doesn't rise or fall on the question of jurisdiction, leaves the discretion with the district court. And your colleague on the other side listed a number of factors that he thought were relevant as to why the district court failed to abuse its discretion. You know, the fact that it turned out the law was wrong, the size of the judgment, the fact that Ms. Ross fought this at every turn. Would the district court have abused its discretion if it had granted 60b-6 relief in this case? I believe it would, Your Honor. That case would be just like the Garibaldi case, which we've cited in our brief. I think it's at page 31 of our brief. But that actually is a case where the court of appeals did reverse a district court that had found extraordinary circumstances. In circumstances very similar to this, if I can go into the facts of that case, it involved a key tam action under the False Claims Act, and the Fifth Circuit had initially against a school board. And the Fifth Circuit had initially vacated the judgment on the grounds that the school board wasn't a person under the False Claims Act. The next year, yeah, the very next year, the Supreme Court issued a new decision holding that local governments were in fact persons under the False Claims Act. So the issue, I'm sorry, and like Ms. Ross, the plaintiff in that case appealed to the Fifth Circuit, sought cert in the Supreme Court. Cert was denied, and so the case was final. The next year, the Supreme Court reached a different result, and they sought relief under Rule 60b-6. The court granted that, and the Fifth Circuit held that that was an abuse of discretion. So it's on all fours, I think, with this case, and even closer. Of course, there it was very close in time to the point at which the case became final. What the Fifth Circuit said is it's not extraordinary for the Supreme Court to deny certiorari in a court of appeals case that it ultimately overrules in a later case. And after almost every resolution of a circuit conflict, there's a losing litigant somewhere who could argue similarly for reopening his case because it was decided erroneously in light of the subsequent Supreme Court decision. If you think about it, most of the cases the Supreme Court takes involve circuit splits, which means that there are going to be in virtually every single one of those cases litigants who were on the losing side in the court of appeals but who ultimately their position prevailed in the court of appeals. Many of those people have sought Supreme Court review and lost it. That happens all the time. That's not enough to make a case extraordinary. So I think that, you know, that's really the only thing at issue here. I think the size of the judgment itself doesn't matter either. I don't think the size of the judgment matters. The judgment is large here because this was a very, very serious fraud. You know, a lot of money was taken from people. So I don't think that's a relevant criterion. What is a relevant criterion and which the Supreme Court did consider is the length of time that has elapsed between the judgment becoming final and the motion. And that's the key thing here. It's not the point at which it's not how long she waited after AMG to file her motion. The question is this is a judgment that had been final for a very long time. And the district court looked at that and said it's on the last page of its decision. The amount of time that has passed since the judgment was entered, almost ten years weighs unfavorable to a finding of extraordinary circumstance. So the district court here, you know, did consider all of the relevant circumstances. It simply found that on balance this was not an extraordinary case. And I've heard nothing to suggest that that was an abuse of discretion. The court, in terms of the Ninth Circuit factors, the court held that those are factors that haven't been endorsed by this court. One of those factors, though, is in fact the length of time that's elapsed, and the court did consider that. Of course, that's a time period that's largely beyond Ms. Ross's control, right? It is a time period that's beyond Ms. Ross's control. I mean, it's not, you know, that's not, we're not faulting her because, of course, there's nothing she could have done other than, I mean, she could have paid the judgment rather than remaining a fugitive. But it's a question of finality and the importance of finality to the court system as a whole. If we're going to reopen 10-year-old judgments, are we going to reopen 20-year-old judgments, 50-year-old judgments? You know, in the Puckey case, this court said it wasn't going to get involved in relitigating the merits of a 20-year-old judgment. It was only dealing with things that were open on direct appeal. And that's consistent with what the Supreme Court said in Harper and in Reynoldsville-Casket. In cases that are open on direct appeal, you get the benefit of a new ruling. Cases that are closed, they're closed. And, you know, I see no reason not to apply that rule here. I want to briefly, just flipping back, mention the Philip Morris case, which was mentioned in the opening. This is page 44 in Chapter 3, page 44, page 81. And what the court said is, we hold that Rule 60b-4 does not commit relief where a court has received its remedial authority. I think that that principle applies squarely here. That's the argument they're making. There's no question that Ms. Ross violated the law, that relief was appropriate. The question here was whether the relief went too far. That's not a jurisdictional issue that's cognizable under Rule 60b-4, nor, as I've said, is it a standing issue. And even if it were, there certainly was an arguable basis. I think I've covered what I had to cover. Are there more questions? Thank you, Mr. Hoffman. Then we would ask that the judgment be affirmed. Yes, sir. Mr. Greenspoon, you've got some time for rebuttal. Yes, thank you, Your Honor. I did not hear any challenge to the logic of our argument about lack of jurisdiction. In fact, there is no citation in the FTC brief to TransUnion or to Summers v. Earth Island Institute. The logic is, without standing, there's no jurisdiction. Standing is not dispensed in gross. A party must have it for every type, kind, or form of relief. And as this court pointed out in Pukey, the holding of AMG Capital was, quote, that the FTC has no authority to seek monetary relief under Section 13b of the FTC Act. This logic, this Pukey holding, it's all about standing. Lack of standing leads to lack of subject matter jurisdiction. The judgment is void. On to several of my friend's other comments. On Garibaldi, you know, there's a lot of over-reading of several of the cases in the FTC's presentation. Garibaldi indicated that fighting for the rule that eventually came about by itself, by itself, is not enough for Rule 60b-6 type relief. But C. Phelps, in the Ninth Circuit, the Phelps decision factored that in. And so that's all we're asking for is the change in the law that supported her position, that she fought for it at every step of the way in the original litigation, plus all the other factors, Judge Giaz, that Your Honor mentioned. Those should have been considered, were not considered by the district court, and make it an abuse of discretion not to grant Rule 60b-6 relief. On Espinoza, I was faulted just now for not reciting the holding of Espinoza, but the holding of Espinoza was not to do with the arguable basis exception. There's mention of arguable basis in our opening brief. We analyzed that. We say, well, Espinoza was being descriptive about what has happened in the past in the circuit courts. They were not being normative or mandatory about courts applying an arguable basis test. On principles of finality, we heard quite a bit of that from my friend. The Gonzalez decision tamps down whatever weight that argument has. In fact, the Gonzalez decision says that considerations of finality deserve little weight in a pure Rule 60b analysis because Rule 60b already bakes in the exceptions to finality. Rule 60b is about exceptions to finality. So by doing the Rule 60b analysis, doing the hard work under it, we're already giving respect to principles of finality. And finally, I heard my friend cite the Harper and Reynoldsville casket decisions for the proposition that, well, we should kind of close our eyes to new developments in jurisdictional law or new revelations that courts were wrong about their preconceptions of jurisdiction. Harper did not say that only cases that remain open on appeal get the benefit of the new decisional law. It did not say that that principle relates exclusively to cases that are open on appeal. In fact, it said the contrary. Harper said, quote, in all events, and in all events, and in all events. So there's a wealth of cases cited by both sides where at least an important factor in the decision-making under Rule 60b-4 or 60b-6 was a new revelation by corrected decisional law. Our case is the strongest of all because our case is the only one of the pantheon of cases cited by both sides where the Supreme Court affirmatively and unanimously corrected a multitude of circuits to reveal what was actually the proper jurisdictional law. And finally, Reynoldsville casket, the section of that decision that they rely on, that the FTC relies on, is very interesting. It's actually a fairly non-germane part at the end of the opinion, non-germane to the ultimate holding. And it was really reflecting on some principles of state conviction habeas law, that there are some real special rules when it comes to retroactivity under, what is it, 2254? It's not my area of practice, but under state court habeas practice. So whatever you might say about principles of finality or retroactivity as regards state court conviction, in habeas practice in federal court when there is a change in the decisional law, that is not germane to questions of Rule 60b. And the proof of that is the Supreme Court's Buck decision, which applied the full panoply of Rule 60b principles even in a habeas situation. I hear your point, but it seems odd that we would say that in a criminal context, we're more likely to promote issues of finality when someone's liberty is at stake and not do so when we're talking about, in the end, money. Well, my real position on this is that you look at the Gonzales decision, footnote 9, and it says that when there's procedural changes of the criminal law aside, when there's a substantive change in the criminal law, we do open our eyes to retroactivity. And we do allow that even in habeas procedures to look backwards. So on that dimension, perhaps the criminal law and the civil law are alike, but that supports Ms. Ross. Thank you, sir. Thank you, Your Honor, for all those reasons, we respectfully request reversal. Yes, sir. Thank you. We'll come down and greet counsel. Come down and greet counsel and then proceed to our final case.
judges: Albert Diaz, Allison J. Rushing, Henry F. Floyd